## Pressman v. Pressman's Adm'r et al.

### (Decided Oct. 18, 1938.)

W. G. DEARING and I. R. GUMER for appellant.
GROVER G. SALES for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Bertha Newman entered into an antenuptial contract with Benjamin Pressman on the 4th of September, 1931. Both parties were about 68 years of age at the time the contract was made. The contract was duly executed and recorded in the Jefferson county clerk's office. Shortly after the contract was entered into the parties were married. Benjamin Pressman died intestate on December 25, 1935. The provisions of the antenuptial contract were:

"This marriage contract between the parties *who* names are hereunto subscribed:

"Witnesseth: That Benjamin Pressman and. Bertha Newman are desirous of entering the state of matrimony, both being advanced in age and are therefore desirous of settling their property rights.

"First: That said Benjamin Pressman is to pay to Bertha Newman the sum of $1,000.00 to be paid her at his death and the payment of the same hereby binds himself, his administrators, his executors, heirs and assigns as stipulated.

"Second: The said Bertha Newman agrees and. binds herself, in consideration of the above payment of $1,000.00 to make no claim to dower, homestead or other distributable rights, interest or share in the real or personal property of said Pressman and hereby releases, relinquishes and *waves* all claim to dower, homestead, household furniture or other distributable right or share in the property, real or personal of said Pressman.

"Third: The said Pressman is to make no claim to any property either real or personal of said Newman, in any matter whatsoever arising out of said marriage.

"Fourth: The said Pressman is to provide said Newman with decent support. during her natural life.

"Fifth: The said Bertha Newman is to make no claim for alimony in case of disagreement between them for any reason whatsoever.

"Sixth: The said Pressman shall have the right to sell any real estate now owned by him or hereafter acquired without the said Newman joining in said deed.

"Given under the hands of the said parties at Louisville, Kentucky, this the 4th day of September, 1931."

Appellant, Bertha Pressman, filed this suit in equity asserting that under clause 4 of the contract the estate of Benjamin Pressman was obliged to provide her decent support for and during her natural life, and that she was entitled to this support in addition to the payment of $1,000, provided for in clause 1 of the contract. She prayed an allowance of $520 annually, and a home, in addition to the cash payment of $1,000. Appellees

denied that this was the meaning of the contract, and contended that Clause 4 was never intended by the parties to mean that Benjamin Pressman should provide appellant with any support after the death of her husband, and that it was intended under the contract and was understood by the parties thereto that appellant was to be paid the sum of $1,000 at the death of Benjamin Pressman in full payment of all dower rights and any other interest that she might have in Pressman's estate.

During the progress of the litigation appellees filed an amended answer claiming the following credits against the payment of $1,000 provided for in the antenuptial contract: $12 each month from January 1, 1936, for cash furnished appellant; $15 each month from January 1, 1936, as rental on the property belonging to Pressman's estate and occupied by appellant; $2 each month from January 1, 1936, for appellant's gas and electric bills paid by the administrator since the death of Benjamin Pressman; making total credits to the amount of $540 up to July 15, 1937, the date of the filing of the amended answer.

Appellant filed an amended petition on July 28, 1937, stating that on the 6th day of December, 1936, she demanded of the administrator payment of the $1,000, and filed her affidavit urging payment. Among other things appellant's affidavit stated that the administrator had been furnishing her $2.50 a week and living quarters, and that $10 per week would be just and reasonable living expenses, and that because of her age (75 years), and feeble health, she needed the services of a nurse which were reasonably worth $10 per week and living quarters, and that she had been paid the sum of $87.50, and that there then remained on what should have been paid her for support the sum of $262.50.

After hearing proof judgment was entered by the chancellor directing that appellant, Bertha Pressman, recover of appellee, Charles B. Pressman, administrator of Benjamin Pressman, deceased, $1,000, with interest from September 2, 1936, the date of the filing of the petition, until paid at the rate of 6%. It was directed that this amount be credited by the sum of $264, representing rent collected by appellant from property owned by Benjamin Pressman from the time of his death; and by the sum of $44, representing the gas and electric

bills of appellant paid by the administrator following Pressman's death; and by the further sum of $45, representing rent at the rate of $15 per month, charged to appellant for property belonging to the estate of Benjamin Pressman and occupied by appellant from July 29, 1937, the date when the administrator notified appellant by registered letter that rent was being charged her for the property she was occupying. The amount due after deducting the total credits of $353 was $647 plus interest.

It was further adjudged that so much of the antenuptial contract as stipulated that Benjamin Pressman provide appellant with decent support during her natural life was a personal obligation which ended with his death, and that the appellant was not entitled to recover anything by reason thereof. Appellant excepted to so much of the judgment as denied her the right to recover any sum in excess of $1,000 and interest, and prayed an appeal to the Court of Appeals, which was granted. The appellees excepted to so much of the judgment as denied them a credit for the reasonable rent of property occupied by appellant prior to the letter written July 29, 1937, at the rate of $15 per month, which credit amounted to $285.

Bertha Pressman filed an appeal asking that this Court direct that she be allowed $15 per month for house rent, $40 per month for groceries, $40 per month for an attendant and $4.16 per month for medicine, all this to date from December 25, 1935, with the proper credits being made for what she had received.

Appellees filed a motion before this Court for a cross appeal, which motion was sustained, praying a cross appeal from so much of the judgment of the chancellor as denied the appellees a credit for the reasonable rental of the property occupied by Bertha Pressman after Benjamin Pressman's death, which amounted to $285 after deducting the credit allowed by the chancellor.

It has frequently been held in this jurisdiction that antenuptial agreements are valid contracts, and that they are to be liberally construed to carry into effect the intention of the parties. Such agreements, if doubtful or ambiguous, have been given the construction most favorable to the wife. Such contracts, like others,

must be construed in terms of the whole contract. In Collins v. Bauman, 125 Ky. 846, 102 S. W. 815, 31 Ky. Law Rep. 455, it was said [page 816]:

> "The validity of this contract is not seriously questioned, and, indeed, could not be, in the light of numerous decisions of our court upholding contracts of a similar nature; the consummation of the marriage in anticipation of which the contract was executed being uniformly held to be a sufficient consideration to support it. Being a valid contract, the next question to be considered is: What were the rights of the respective parties under this contract? In dealing with the subject of 'Antenuptial Contracts,' the rule for construction is thus stated in volume 19, p. 1240, American & English Encyclopædia of Law: 'Antenuptial contracts are to be liberally construed, to carry into effect the intention of the parties, without regard to the strictly technical meaning of the words used. For this purpose the whole instrument should be considered, and evidence, also, of the situation of the parties, the surrounding circumstances, and all other means that will throw light on the intention of the parties, will be received.' This rule of construction is supported by a long line of authorities."

Morris Horvitz, who testified that he drew up the marriage contract for Bertha Newman and Benjamin Pressman, representing both parties, stated that he told Bertha Newman, who spoke and understood only Yiddish, that, under the contract, she was to get $1,000 and no more after Pressman's death, and that clause 4 meant that she would get decent support only so long as they lived together. His explanation for the fourth clause of the contract was as follows:

> "Q. 15. Were you instructed to put anything else in the contract to provide for her after his death? A. No, sir, of course they were arguing, she was interested or found out Mr. Pressman was sort of—a sort of tight wad and I might say, I don't want to go into what she said at that time or what she did—

> "Q. 16. That is not essential. A. And she wanted to protect herself as far as him taking care of her during the time she was with him. She also

talked about he should take good care of her while they lived together, in other words, provide her with a decent home for she had heard he didn't provide very well for his first wife and she was therefore—that was the only thing she was interested in."

Appellant testified that Horvitz did not explain that the fourth clause of the contract meant that she was to have support only during Benjamin Pressman's life, and that at his death she was to have only $1,000. Be this as it may, the contract speaks for itself.

It was stipulated by the parties to this litigation that at the time the antenuptial contract was entered into on September 4th, 1931, the $4,700 estate belonging to Benjamin Pressman, as testified to by Charles Pressman, administrator, consisted entirely of real estate. On this point the chancellor stated in his opinion:

"The decedent was at that time possessed of an estate of the approximate value of $4700.00, the major portion of which was in real estate.

"If there had been no contract, the plaintiff would have inherited one-half of the personal property and one-third of the real property for life. Instead of measuring her rights by the statutes, she agreed to accept at the death of Mr. Pressman One Thousand ($1,000.00) Dollars in lieu of all her marital rights in his estate and the Court is of the opinion that $1,000.00 is approximately the full value of what she would have received if there had been no contract."

There is no conclusive evidence that the estate left by Benjamin Pressman changed much in nature or value after 1931.

Viewing the antenuptial contract made between Bertha Newman and Benjamin Pressman as a whole, and also the circumstances pertaining thereto, we are of the opinion that the judgment of the chancellor properly interpreted the intent of the parties to the contract, and should, therefore, be upheld. To do otherwise would have the effect of reading into the marriage contract meanings that were obviously not intended by the parties.

Judgment affirmed on both the appeal and the cross appeal.